**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 14-cv-02599-RM

CHRISTOPHER MONDRAGON,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

**ORDER**

---

    This matter is before the Court on Christopher Mondragon's ("Plaintiff") request for judicial review pursuant to 42 U.S.C. § 405(g). (ECF No.1.) Plaintiff challenges the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act"). An Administrative Law Judge ("ALJ") ruled Plaintiff was not disabled within the meaning of the Act and therefore not entitled to DIB or SSI.

    Defendant provided the Court with the administrative record. (ECF Nos. 13; 13-1; 13-2; 13-3; 13-4; 13-5; 13-6; 13-7; 13-8; 13-9; 13-10; 13-11.) The matter is fully briefed and ripe for adjudication. (ECF Nos. 16; 17; 18.)

    For the reasons set forth below, the Court vacates the denial of Plaintiff's applications and remands for proceedings consistent with this Order.

## I. BACKGROUND

Plaintiff applied for DIB and SSI in January 2012, alleging he was disabled as of March 21, 2010, due to the following conditions that limit his ability to work: left foot, dropped foot, left hip pain, right shoulder pain, left internal dead kidney, reconstructed stomach wall (Admin. R. ("Tr.") 149-58, 205.) Plaintiff amended his applications to reflect an onset date of January 24, 2012, due to mental health issues. (Tr. 40-41.) After Plaintiff's applications were initially denied (Tr. 65-88), Plaintiff requested a hearing before an ALJ (Tr. 98-99). The ALJ denied Plaintiff's applications. (Tr. 16-35.) Plaintiff requested review of the ALJ's decision (Tr. 14-15) and, in July 2014, the Appeals Council denied such review (Tr. 1-5). Plaintiff timely requested judicial review before the Court.

### A. Background and Relevant Medical Evidence[1]

Plaintiff was born in 1987. (Tr. 149.) Plaintiff completed eleventh grade. (Tr. 206.) Plaintiff passed the GED. (Tr. 52.) Plaintiff's past relevant work history, as referenced in the Dictionary of Occupational Titles, includes: fast food cook, fast food worker, stocker, and managing stocker. (Tr. 60.)

Plaintiff claims he is disabled due to a combination of physical and mental health impairments.

#### 1. Physical Impairments

In March 2010, Plaintiff was in a motor vehicle accident from which he suffered damaged internal organs, broken ribs, a right-shoulder fracture, a dislocated left hip, and multiple fractures of the left leg, ankle, and foot. (Tr. 249-330, 350-82, 479-540.)

In 2010, Plaintiff's third and fourth toes on Plaintiff's left foot were amputated. (Tr. 565.) In 2010, Plaintiff also developed a left foot drop. (Tr. 561-62.)

---

[1] The Court will not discuss impairments or conditions that are not at issue in Plaintiff's opening brief.

Also in 2010, Plaintiff completed occupational therapy to increase the functioning of his right arm. (Tr. 578-613.)

In December 2010, Plaintiff returned to work as a stocker at Wal-Mart. (Tr. 43, 189.) Plaintiff testified that he could not perform the functions of his job at Wal-Mart because of his disabilities, and he was therefore, terminated. (Tr. 43-46, 50-51.)

In March 2012, Tim Moser, M.D., provided a consultative examination of Plaintiff in relation to Plaintiff's application for disability benefits. (Tr. 573-77.) Dr. Moser opined Plaintiff had some limitations in postural and manipulative activities; could not lift and carry more than 20 pounds occasionally and 10 pounds frequently; could stand and walk for fewer than two hours in an eight-hour workday but could sit for an unlimited amount of time; and required use of a brace and cane to walk. (Tr. 577.)

Plaintiff testified that his physical pain causes him trouble with focusing and concentrating. (Tr. 58.)

    2.    <u>Mental Impairments</u>

In January 2012, Plaintiff received mental health treatment from Spanish Peaks Mental Health Center ("SPMHC"). (Tr. 629-48.) Plaintiff was diagnosed with post-traumatic stress disorder ("PTSD"), anxiety, and depression. (Tr. 645-46.) In mid-2012, Plaintiff was discharged from treatment because he did not attend group therapy sessions as required as well as did not respond to SPMHC's attempts to engage him in treatment. (Tr. 639.)

Plaintiff testified that he loses focus a lot and that while he is watching TV he will "daze out." (Tr. 52-53.)

**B.     The ALJ's Decision**

On March 7, 2013, ALJ Debra Boudreau issued her decision in this matter denying Plaintiff DIB and SSI. (Tr. 16-35.) In reaching her decision, ALJ Boudreau followed the five-step sequential evaluation process for evaluating disability claims. (Tr. 21-31.) ALJ Boudreau found that Plaintiff has met the disability insured status of the Act through December 31, 2016 and has not engaged in substantial gainful activity since January 24, 2012, the amended alleged onset date. (Tr. 21.) ALJ Boudreau found that Plaintiff has the following severe impairments: "left foot drop; status post multiple left lower extremity fractures; status post right shoulder fracture; degenerative joint disease of left foot." (Tr. 21-23.) ALJ Boudreau found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 of the Social Security Regulations, specifically considering Listings 1.02, 1.00B2b, 1.00B2c, 1.06, and 1.07. (Tr. 23-24.) ALJ Boudreau found Plaintiff's residual functional capacity ("RFC") to be as follows:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that the claimant can occasionally lift and/or carry up to 20 pounds and can frequently lift and/or carry up to 10 pounds. In addition, the claimant can stand and/or walk for a total of less than 2 hours in an 8-hour workday. The claimant has no limitation on sitting. Moreover, he requires the use of a cane and a brace to ambulate but can carry light items, such as files, in his free hand while ambulating. The claimant can never climb. He can occasionally balance. The claimant should never stoop, kneel, crouch, or crawl. The claimant can reach, handle, finger, and feel with his right dominant hand on an occasional basis. He has no limitations on the use of his left hand. The claimant should avoid concentrated exposure to vibrations, temperature extremes, hazardous machinery, and unprotected heights.

(Tr. 24-29.) ALJ Boudreau found that Plaintiff has past relevant work and that he is unable to perform such work. (Tr. 29.)

Based on the vocational expert's testimony, which in turn was predicated on ALJ Boudreau's hypotheticals and in consideration of Plaintiff's age, education, and work experience,

ALJ Boudreau found that Plaintiff could perform jobs that exist in significant numbers in the national economy, including: call out operator and surveillance systems monitor. (Tr. 30-31.)

Therefore, ALJ Boudreau concluded that Plaintiff was not disabled. (Tr. 31.)

### C. Procedural History

Plaintiff appealed the ALJ's decision at issue in this matter. (Tr. 15.) On July 28, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1-5.) Plaintiff appeals that decision by bringing this lawsuit. (ECF No. 1.)

## II. LEGAL STANDARDS[2]

### A. Standard of Review

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Although a district court will "not reweigh the evidence or retry the case," it "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir.

---

[2] Many C.F.R. citations are to part 404—which addresses DIB claims. All cited regulations have parallel citations in part 416—which addresses SSI claims.

2006).  As the Tenth Circuit Court of Appeals observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues." *Id.* at 479-480 (citations omitted).  This duty exists even when the claimant is represented by counsel.  *Id.* at 480 (citation omitted).

Also, "[t]he failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and internal quotation marks omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) ("[T]he Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal.").

**B.     Evaluation of Disability**

The criteria to obtain DIB under Title II of the Act are that a claimant meets the insured status requirements, is younger than 65 years of age, files an application for a period of disability, and is under a "disability" as defined under Title II of the Act.  42 U.S.C. §§ 416(i), 423(a); *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).  In addition, the individual's disability must have begun before his or her disability-insured status has expired.  20 C.F.R. § 404.101; Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8 (1983).

The criteria for SSI payments under Title XVI of the Act are determined on the basis of the individual's income, resources, and other relevant characteristics.  42 U.S.C. § 1382(c)(1).  In addition to being financially eligible, the individual must file an application for SSI and be under a disability as defined in the Act.  42 U.S.C. § 1382.

The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to

result in death or [that] has lasted or can be expected to last for a continuous period of not [fewer] than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (definition for benefits under SSI); *see also* 42 U.S.C. § 423(d)(2)(A) (definition for benefits under DIB); *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

There is a five-step sequent for evaluating a disability. *See* 20 C.F.R. §§ 404.1520, 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step analysis). If it is determined that a claimant is or is not disabled at any point in the analysis, the analysis ends. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(a)(4)(i). Second, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *Id*. at §§ 404.1520(c), 416.920(a)(4)(ii). Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled. *Id*. at §§ 404.1520(d), 416.920(a)(4)(iii). If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to the fourth step. Fourth, the claimant must show that the "impairment prevents [him or her] from performing work [he or she] has performed in the past." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *accord* 20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv). If the claimant is able to perform his or her previous work, he or she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv). Fifth, the Commissioner must demonstrate: (1) that based on the claimant's residual functional capacity ("RFC"), age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy.

*Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(a)(4)(v).

**III. ANALYSIS**

Plaintiff raises numerous issues for the Court's consideration, including that: (1) the ALJ erred in finding Plaintiff's mental health impairments non-severe (ECF No. 16 at 5-6); (2) the ALJ erred in failing to order a psychological consultative examination (ECF No. 16 at 6-7); and (3) the ALJ erred in her Step-Five determination due to a lack of substantial evidence (ECF No. 16 at 7-9). As a subspecies of Plaintiff's argument in favor of vacating Defendant's decision, Plaintiff argues that the ALJ erred in failing to consider Plaintiff's mental health impairments in fashioning the RFC. (*See* ECF No. 16 at 6 ("Even if his mental health issues are not, in and of themselves, disabling, they nevertheless must be considered along with every other impairment."), 7 (the ALJ engaged in "an incomplete assessment of [Plaintiff's] condition and resulting limitations"); ECF No. 18 at 1-2 ("A moderate impairment in sustaining focused attention and concentration is more than a slight abnormality with more than a minimal effect on the ability to do basic work activities per SSR 96-3p.", 3 ("[I]t is not harmless error where the ALJ's RFC assessment failed to include any limitations related to [Plaintiff's] mental health conditions.").) Defendant construed Plaintiff's argument as raising an issue with respect to the ALJ's RFC determination. (ECF No. 17 at 14-18.)

Because the Court finds the ALJ committed legal error due to her failure to discuss Plaintiff's mental impairments in fashioning the RFC and the RFC is not based upon substantial evidence, the Court VACATES Defendant's decision.

Because this error alone requires remand, the Court does not address the other arguments raised by Plaintiff. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's

error affected the analysis as a whole, a court properly declined to address other issues raised on appeal); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."). The Court expresses no opinion as to Plaintiff's other arguments and neither party should take the Court's silence as tacit approval or disapproval of how the evidence was considered. The Court does not intend, by the opinion, to suggest the result that should be reached on remand; rather, the Court encourages the parties (as well as the ALJ) to consider all of the evidence and the issues anew.

>    A.   **The ALJ Erred in Failing to Analyze Plaintiff's Mental Impairments in Consideration of the Applicable RFC and Substantial Evidence Does Not Support the RFC**

In this matter, the ALJ acknowledged that Plaintiff's DIB and SSI applications were, in part, based upon Plaintiff's mental health impairments. (Tr. 22.) The ALJ determined that Plaintiff's "medically determinable mental impairments of posttraumatic stress disorder, generalized anxiety disorder, and major depressive disorder, considered singly and in combination, do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." (Tr. 22.) Further, the ALJ found Plaintiff "has a moderate limitation in his ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." (Tr. 23.)

Although the ALJ applied the special technique required by the regulations, 20 C.F.R. § 404.1520a, in considering the broad categorical function limitations stemming from Plaintiff's mental impairments (Tr. 21-23), the ALJ did not discuss Plaintiff's medically determinable

9

mental impairments in her RFC discussion. (*See generally* Tr. 24-29.) The ALJ used boilerplate language. Specifically the ALJ, in fashioning the RFC, stated

> the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

(Tr. 25.) Further, the ALJ stated that "she has considered all the evidence of record, including Exhibits 1A through 12F, whether explicitly discussed in this decision or not." (Tr. 27.) The Tenth Circuit, however, has rejected such boilerplate language. *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004). The ALJ must explain what specific evidence led her to her RFC determination. *See Hardman*, 362 F.3d at 679; *see also Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Despite Defendant's argument to the contrary (ECF No. 17 at 17 n.8), the ALJ's blanket statement that she considered all of the evidence fails to inform the Court, in a meaningful and reviewable way, of the specific evidence the ALJ considered in determining Plaintiff's mental health impairments (specifically, his moderate concentration impairment) complaints were not credible and thus, did not need to be included in the RFC or that they were accounted for in the RFC. *See Hardman*, 362 F.3d at 679.

The RFC is defined as the most that a claimant can do in a work setting despite the claimant's mental and physical limitations. 20 C.F.R. § 404.1545(a)(1). "The determination of RFC is an administrative assessment, based upon all the evidence of how the claimant's impairments and related symptoms affect her ability to perform work-related activities." *Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) (unpublished). "The final responsibility for determining RFC rests with the Commissioner, based upon all the evidence in the record, not only the relevant medical evidence." *Id*.

"'The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)). Also relying on SSR 96-8p, the Tenth Circuit in *Lawton v. Barnhart*, 121 F. App'x 364, 374 (10th Cir. 2005) (unpublished) described the analysis required in the RFC as follows:

> The ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis ... and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

*Id*. (quoting SSR 96-8p, 1996 WL 374184, at *7). The ALJ must also explain *how any material inconsistencies or ambiguities in the case record were considered and resolved*. *Id*. In this matter, the ALJ did not explain how she considered and resolved Plaintiff's diagnosis of several mental-health impairments (Tr. 634, 645-46) with the RFC determination. There exists an inconsistency (Tr. 23) between the ALJ's finding Plaintiff suffered from a functional limitation ("has a moderate limitation in his ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings") and her finding that Plaintiff's level of activity is inconsistent with said determination ("although the [Plaintiff] testified to problems with focus and concentration, he has reported playing video games and watching a lot of television, activities which often require a great deal of concentration") (Tr. 28). (*See generally* Tr. 21-29.)[3]

"The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7. In this matter, the ALJ

---

[3] And the ALJ impermissibly ignores other testimony to the effect that Plaintiff will "daze out" while watching television (Tr. 53). *See Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (citation omitted).

11

discussed why Plaintiff's reported "problems with focus and concentration" cannot reasonably be accepted as consistent with a disabled finding. (Tr. 28.) It is axiomatic, however, that all of the ALJ's required findings, including the RFC, must be supported by substantial evidence. *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). Thus, where the ALJ fails to point to specific evidence supporting each conclusion, the RFC findings are not supported by substantial evidence and a remand is required. *See also Moon v. Barnhart*, 159 F. App'x 20, 23 (10th Cir. 2005) (unpublished) (remanding the case to the Commissioner where "the ALJ never specified what he believed the credible medical evidence to be, either for the purpose of rejecting the doctors' RFC assessments or for the purpose of supporting his own finding" and where the court was thus unable to determine what evidence the ALJ relied on in connection with the RFC); *see also Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003) (unpublished). In this matter, the ALJ identified that the activities of "playing video games and watching a lot of television . . . *require a great deal of concentration*." (Tr. 28 (emphasis added).) But whether these activities "require a great deal of concentration" are not facts in the record (and the ALJ does not cite to such facts). For this reason, the ALJ's credibility determination—which in turn assisted in the ALJ's RFC determination—lacks substantial evidence. *See* 96-7p, 1996 WL 374186, at *4 (July 2, 1996) ("The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The *reasons for the credibility finding must be grounded in the evidence* and articulated in the determination or decision.") (Emphasis added). When an ALJ does not provide an explanation *based upon substantial evidence* for rejecting evidence, *i.e.*, Plaintiff's subjective complaints regarding his inability to concentrate and focus, the Court cannot meaningfully review the ALJ's determination. *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (quoting *Clifton v.*

*Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding "[i]n the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion"); *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995) (holding ALJ's listing of factors he considered was inadequate when court was "left to speculate what specific evidence led the ALJ to [his conclusion]")).

"[A]n ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less" and a failure to do so "is reversible error." *Salazar*, 468 F.3d at 621 (citations omitted); *accord* 42 U.S.C. § 423(d)(2)(B); *accord* 20 C.F.R. § 404.1523. At Steps 4 and 5, the ALJ "must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe.*" *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)) (emphasis in original). "[T]he Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis." *Wells*, 727 F.3d at 1065 (citing SSR 96-8p, 1996 WL 374184, at *4). Although the ALJ found Plaintiff's mental impairments to be non-severe (Tr. 22-23), this finding did not excuse the ALJ from considering Plaintiff's mental impairments in relation to Plaintiff's RFC. "[T]he ALJ's 'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence.'" *Wells*, 727 F.3d at 1065 (citing SSR 96-8p, 1996 WL 374184 at *7).

Defendant argues, without citation to the record, that "the ALJ reasonably did not find that Plaintiff's mental condition satisfied the durational requirements of the regulations." (ECF No. 17 at 17.) First, the ALJ did not make a finding that Plaintiff's mental health impairments were not of sufficient duration. (*See generally* Tr. 19-31, 23 (the ALJ stated that Plaintiff's

"*treatment* was short-term and appeared to be situational" not that his mental health impairments were short-term) (emphasis added).) The ALJ's decision must be evaluated "based solely on the reasons given stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). "'Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.'" *Id*. at 1084-85 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (holding that a post hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance and that judicial review is limited to the reasons stated in the ALJ's decision). Second, whether Plaintiff's mental impairments satisfied the durational requirements necessary for a disabled finding is a separate inquiry from whether Plaintiff has medically determinable mental health impairments (which the ALJ found) and thus, what functional limitations, if any, result from such impairments. In this matter, the ALJ did not discuss Plaintiff's mental impairments, *i.e.*, posttraumatic stress disorder, generalized anxiety disorder, and major depressive disorder, in fashioning the RFC. (*See generally* Tr. 24-29.) A function-by-function evaluation is necessary in order to arrive at an accurate RFC. SSR 96-8p, 1996 WL 374184 at *3-4 ("[A] failure to first make a function-by-function assessment of the [claimant's] limitations or restrictions could result in the adjudicator overlooking some of [the claimant's] limitations or restrictions.").

Harmless error analysis is applicable if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005). This analysis is applied cautiously in the administrative context. *Id*. at 733. Where the Court "can follow the

adjudicator's reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). In this matter, Defendant does not advocate that the Court apply harmless error analysis. Further, the Court does not find the harmless error analysis applicable in this matter. Specifically, the Court is unable to discern how the ALJ's finding that Plaintiff has "a moderate limitation in his ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings" (Tr. 23) comports with the finding that Plaintiff has no functional limitations related to his mental health in the RFC (*see generally* Tr. 24-29).[4]

Defendant argues that "[t]he ALJ accounted for Plaintiff's minimal limitations in mental work-related activities by confirming with the VE that all of the jobs identified were unskilled jobs. . . ." (ECF No. 17 at 18.) The RFC, however, contains no limitation to unskilled work. (*See generally* Tr. 24-25.) While the limitation to unskilled work could properly account for moderate concentration impairments, *see Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015), because the limitation to unskilled work is not in the RFC (*see generally* Tr. 24-25), the ALJ erred in her RFC assessment. Additionally, the ALJ decision states that she "asked the vocational expert whether jobs exist in the national economy for an individual with the [Plaintiff's] age, education, work experience, and residual functional capacity." (Tr. 30.) Again, the RFC does not include a limitation to unskilled work. (*See generally* Tr. 24-25.) The Court recognizes that the ALJ posed as a hypothetical to the vocational expert the limitation to unskilled work, to which the vocational expert testified that Plaintiff could still perform the jobs

---

[4] Further, in discussing the severity of Plaintiff's mental impairments (Tr. 21-23), the ALJ appears to create a contradiction. Initially, the ALJ states Plaintiff has "mild difficulties" with respect to "concentration, persistence or pace." (Tr. 23.) Then, a few sentences later, the ALJ states that Plaintiff "has a moderate limitation in his ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." (Tr. 23.) Because the Court is unable to follow the ALJ's reasoning for how she resolved these apparent inconsistencies, the Court vacates Defendant's decision.

of call out operator or surveillance systems monitor. (Tr. 62-63.) The ALJ, however, also added an additional hypothetical which concerned the amount of time a worker would be off task as twenty percent, presumably based on an inability to concentrate, to which the vocational expert testified that limitation would eliminate all competitive employment. (Tr. 63.) The Court cannot conclude that the ALJ's RFC error was rendered harmless by the vocational expert hypotheticals because it is not apparent that the dispositive hypothetical encompassed all of the functional limitations properly suggested by the ALJ's finding of a moderate concentration impairment (Tr. 23), *i.e.*, whether a worker can remain on task. *See Wiederholt v. Barnhart*, 121 F. App'x 833, 839-40 (10th Cir. 2005) (unpublished) (holding that "[t]he relatively broad, unspecified nature of the description 'simple' and 'unskilled' does not adequately incorporate the ALJ's additional, more specific findings regarding [the plaintiff's] mental impairments . . . such as moderate difficulties maintaining concentration, persistence, or pace, [and thus,] the resulting hypothetical question was flawed"); *see also Porter v. Colvin*, Case No. CIV-14-850-D, 2015 WL 5672603, *5 (W.D. Okla. Aug. 31, 2015).

**IV.     CONCLUSION**

Based on the foregoing, the Court:

(1)     VACATES Defendant's denial of disability insurance benefits and supplemental security income; and

(2)     REMANDS to Defendant for further proceedings as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

DATED this 28th day of March, 2016.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge